Daniel Sadeh, Esq.
**HALPER SADEH LLP**
667 Madison Avenue, 5th Floor
New York, NY 10065
Telephone: (212) 763-0060
Facsimile: (646) 776-2600
Email: sadeh@halpersadeh.com

*Counsel for Plaintiff*

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SCOTT COLLINS,<br><br>  Plaintiff,<br><br>  v.<br><br>HILL-ROM HOLDINGS, INC., WILLIAM G. DEMPSEY, JOHN P. GROETELAARS, GARY L. ELLIS, STACY ENXING SENG, MARY GARRETT, JAMES R. GIERTZ, WILLIAM H. KUCHEMAN, GREGORY J. MOORE, FELICIA F. NORWOOD, and NANCY M. SCHLICHTING,<br><br>  Defendants. | Case No:<br><br>JURY TRIAL DEMANDED |

**COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**

Plaintiff Scott Collins ("Plaintiff"), by Plaintiff's undersigned attorneys, for Plaintiff's complaint against Defendants (defined below), alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and upon information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through Plaintiff's attorneys.

**NATURE OF THE ACTION**

1.  This is an action against Hill-Rom Holdings, Inc. ("Hillrom" or the "Company") and its Board of Directors (the "Board" or the "Individual Defendants") for their violations of

1

Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a) and 78t(a), and Rule 14a-9 promulgated thereunder by the SEC, 17 C.F.R. § 240.14a-9, in connection with the proposed acquisition (the "Proposed Transaction") of Hillrom by Baxter International Inc. ("Baxter") and Bel Air Subsidiary Inc. ("Merger Sub"), a direct wholly owned subsidiary of Baxter.

## JURISDICTION AND VENUE

2. The claims asserted herein arise under and pursuant to Sections 14(a) and 20(a) of the Exchange Act (15 U.S.C. §§ 78n(a) and 78t(a)) and Rule 14a-9 promulgated thereunder by the SEC (17 C.F.R. § 240.14a-9).

3. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331, and Section 27 of the Exchange Act, 15 U.S.C. § 78aa.

4. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) and Section 27 of the Exchange Act (15 U.S.C. § 78aa(c)) as a substantial portion of the transactions and wrongs complained of herein had an effect in this District, and the alleged misstatements entered and the subsequent damages occurred in this District.

5. In connection with the acts, conduct and other wrongs alleged in this complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mails, interstate telephone communications and the facilities of the national securities exchange.

## PARTIES

6. Plaintiff is, and has been at all relevant times hereto, an owner of Hillrom common stock.

7. Defendant Hillrom operates as a medical technology company worldwide. The Company is incorporated in Indiana. The Company's common stock trades on the New York Stock Exchange under the ticker symbol, "HRC."

8. Defendant William G. Dempsey ("Dempsey") is Chairman of the Board of the Company.

9. Defendant John P. Groetelaars ("Groetelaars") is President, Chief Executive Officer, and a director of the Company.

10. Defendant Gary L. Ellis ("Ellis") is a director of the Company.

11. Defendant Stacy Enxing Seng ("Seng") is a director of the Company.

12. Defendant Mary Garrett ("Garrett") is a director of the Company.

13. Defendant James R. Giertz ("Giertz") is a director of the Company.

14. Defendant William H. Kucheman ("Kucheman") is a director of the Company.

15. Defendant Gregory J. Moore ("Moore") is a director of the Company.

16. Defendant Felicia F. Norwood ("Norwood") is a director of the Company.

17. Defendant Nancy M. Schlichting ("Schlichting") is a director of the Company.

18. Defendants Dempsey, Groetelaars, Ellis, Seng, Garrett, Giertz, Kucheman, Moore, Norwood, and Schlichting are collectively referred to herein as the "Individual Defendants."

19. Defendants Hillrom and the Individual Defendants are collectively referred to herein as the "Defendants."

## SUBSTANTIVE ALLEGATIONS

### A. The Proposed Transaction

20. On September 2, 2021, Hillrom and Baxter announced that they had entered into a definitive agreement by which Baxter would acquire Hillrom for $156.00 per share in cash. The

press release announcing the Proposed Transaction states, in pertinent part:

**Baxter to Acquire Hillrom, Expanding Connected Care and Medical Innovation Globally**

*Transaction valued at $156.00 per Hillrom Share for an All-Cash Purchase Price of $10.5 Billion*

- *Brings together two leading medical technology companies to broaden access to care in the hospital, home and alternate site settings*
- *Accelerates digitally-enabled connected care solutions across the continuum of care*
- *Builds on Baxter's global footprint to expand Hillrom's penetration of international markets*
- *Creates significant opportunities to position Baxter for faster top- and bottom-line growth*
- *Expected to generate high single-digit ROIC by year five*

September 02, 2021 07:00 AM Eastern Daylight Time

DEERFIELD, Ill.& CHICAGO--(BUSINESS WIRE)--Baxter International Inc. (NYSE:BAX), a leading global medical products company, and Hillrom (NYSE:HRC), a global medical technology leader, today announced that the companies have entered into a definitive agreement under which Baxter has agreed to acquire Hillrom for $156.00 per share in cash for a total equity value of approximately $10.5 billion and a total enterprise value of approximately $12.4 billion, including the assumption of debt.

\*   \*   \*

**Transaction Highlights**

Upon completion of the transaction, Baxter will pay $156.00 in cash for each outstanding share of Hillrom common stock for a purchase price of $10.5 billion. Baxter will also assume Hillrom's outstanding debt and cash, for a total enterprise value of $12.4 billion. The purchase price represents a 26% premium to Hillrom's closing stock price on July 27, 2021, the last trading day prior to media reports speculating about a potential transaction.

Baxter expects the combination to result in approximately $250 million of annual pre-tax cost synergies by the end of year three. This estimate excludes any benefit from potential new revenue growth opportunities resulting from the combination of the two organizations.

The transaction is expected to be low double-digit accretive to Baxter's adjusted earnings per share (EPS) in the first full year post close, increasing to more than

4

20% by year three. The transaction is also expected to expand Baxter's overall adjusted EBITDA margins over the medium-term and deliver strong cash flow generation with a high single-digit return on invested capital (ROIC) expected by year five.

Baxter will finance the transaction through a combination of cash and fully committed debt financing. At closing, Baxter estimates that it will have net leverage of approximately 4.2x net debt to pro forma[1] adjusted EBITDA of the combined companies (as estimated by Baxter management). Baxter is committed to an investment grade credit rating and deleveraging to 2.75x net leverage within two years of closing.

**Approvals and Timing**

The Boards of Directors of both companies have unanimously approved the acquisition. The transaction is subject to the approval of Hillrom shareholders and the satisfaction of customary closing conditions, including regulatory approvals. The transaction is expected to close by early 2022.

\*     \*     \*

**Advisors**

Perella Weinberg Partners LP is acting as lead financial advisor to Baxter. J.P. Morgan and Citi are also serving as financial advisors to Baxter and have committed to provide fully committed financing. Sullivan & Cromwell LLP is serving as legal advisor to Baxter. Goldman, Sachs & Co. LLC is serving as lead financial advisor and BofA Securities is serving as financial advisor to Hillrom. Wachtell, Lipton, Rosen & Katz is serving as legal advisor to Hillrom.

\*     \*     \*

**About Baxter**

Every day, millions of patients and caregivers rely on Baxter's leading portfolio of critical care, nutrition, renal, hospital and surgical products. For 90 years, we've been operating at the critical intersection where innovations that save and sustain lives meet the healthcare providers that make it happen. With products, technologies and therapies available in more than 100 countries, Baxter's employees worldwide are now building upon the company's rich heritage of medical breakthroughs to advance the next generation of transformative healthcare innovations. To learn more, visit www.baxter.com and follow us on Twitter, LinkedIn and Facebook.

**About Hillrom**

5

> Hillrom is a global medical technology leader whose 10,000 employees have a single purpose: enhancing outcomes for patients and their caregivers by Advancing Connected Care™. Around the world, our innovations touch over 7 million patients each day. They help enable earlier diagnosis and treatment, optimize surgical efficiency and accelerate patient recovery while simplifying clinical communication and shifting care closer to home. We make these outcomes possible through digital and connected care solutions and collaboration tools, including smart bed systems, patient monitoring and diagnostic technologies, respiratory health devices, advanced equipment for the surgical space and more, delivering actionable, real-time insights at the point of care. Learn more at hillrom.com.

21.     On October 1, 2021, Defendants caused to be filed with the SEC a Schedule 14A Preliminary Proxy Statement (the "Proxy Statement") pursuant to Section 14(a) of the Exchange Act in connection with the Proposed Transaction.

### B. The Proxy Statement Contains Materially False and Misleading Statements and Omissions

22.     The Proxy Statement, which recommends that Hillrom shareholders vote in favor of the Proposed Transaction, omits and/or misrepresents material information concerning: (i) Hillrom's financial projections; and (ii) the financial analyses performed by Hillrom's financial advisors, Goldman Sachs & Co. LLC ("Goldman Sachs") and BofA Securities, Inc. ("BofA"), in connection with their fairness opinions.

23.     The omission of the material information (referenced below) renders the following sections of the Proxy Statement false and misleading, among others: (i) Recommendation of the Hillrom Board of Directors; (ii) Reasons for the Merger; (iii) Opinion of Goldman Sachs & Co. LLC; (iv) Opinion of BofA Securities, Inc.; and (v) Certain Unaudited Financial Projections.

24.     Unless and until the material misstatements and omissions (referenced below) are remedied before the anticipated shareholder vote on the Proposed Transaction, Hillrom shareholders will be forced to make a voting decision on the Proposed Transaction without full disclosure of all material information. In the event the Proposed Transaction is consummated, Plaintiff may seek to recover damages resulting from Defendants' misconduct.

### 1. Material Omissions Concerning Hillrom's Financial Projections

25. The Proxy Statement omits material information concerning Hillrom's financial projections.

26. With respect to Hillrom's financial projections, the Proxy Statement fails to disclose: (1) all line items underlying (i) Revenue, (ii) Adjusted EBITDA, (iii) Adjusted Operating Income, and (iv) Unlevered Free Cash Flow; (2) Hillrom's net income projections; and (3) a reconciliation of all non-GAAP to GAAP metrics.

27. The disclosure of this information is material because it would provide the Company's shareholders with a basis to project the future financial performance of the Company and would allow shareholders to better understand the financial analyses performed by the Company's financial advisors in support of their fairness opinions. Shareholders cannot hope to replicate management's inside view of the future prospects of the Company. Without such information, which is uniquely possessed by Defendant(s) and the Company's financial advisors, the Company's shareholders are unable to determine how much weight, if any, to place on the Company's financial advisors' fairness opinions in determining whether to vote for or against the Proposed Transaction.

28. When a company discloses non-GAAP financial metrics in a Proxy Statement that were relied upon by its board of directors in recommending that shareholders exercise their corporate suffrage rights in a particular manner, the company must also disclose, pursuant to SEC Regulation G, all projections and information necessary to make the non-GAAP metrics not misleading, and must provide a reconciliation (by schedule or other clearly understandable method) of the differences between the non-GAAP financial metrics disclosed or released with the most comparable financial metrics calculated and presented in accordance with GAAP. 17 C.F.R.

§ 244.100.[1]

29. The above-referenced omitted information, if disclosed, would significantly alter the total mix of information available to the Company's shareholders.

## 2. Material Omissions Concerning the Financial Advisors' Analyses

30. In connection with the Proposed Transaction, the Proxy Statement omits material information concerning analyses performed by Goldman Sachs and BofA.

31. The valuation methods, underlying assumptions, and key inputs used by Goldman Sachs and BofA in rendering their purported fairness opinions must be fairly disclosed to Hillrom shareholders. The description of Goldman Sachs' and BofA's fairness opinions and analyses, however, fail to include key inputs and assumptions underlying those analyses. Without the information described below, Hillrom shareholders are unable to fully understand Goldman Sachs' and BofA's fairness opinions and analyses, and are thus unable to determine how much weight, if any, to place on them in determining whether to vote for or against the Proposed Transaction. This omitted information, if disclosed, would significantly alter the total mix of information available to the Company's shareholders.

### a. *Goldman Sachs' Analyses*

32. The Proxy Statement fails to disclose the following concerning Goldman Sachs' "*Discounted Cash Flow Analysis*": (1) the individual inputs and assumptions underlying the (i)

---

[1] Mary Jo White, *Keynote Address, International Corporate Governance Network Annual Conference: Focusing the Lens of Disclosure to Set the Path Forward on Board Diversity, Non-GAAP, and Sustainability* (June 27, 2016), https://www.sec.gov/news/speech/chair-white-icgn-speech.html (footnotes omitted) (last visited Oct. 12, 2021) ("And last month, the staff issued guidance addressing a number of troublesome practices which can make non-GAAP disclosures misleading: the lack of equal or greater prominence for GAAP measures; exclusion of normal, recurring cash operating expenses; individually tailored non-GAAP revenues; lack of consistency; cherry-picking; and the use of cash per share data. I strongly urge companies to carefully consider this guidance and revisit their approach to non-GAAP disclosures.").

discount rates ranging from 7.5% to 8.5%, (ii) perpetuity growth rates ranging from 1.0% to 2.0%, and (iii) multiples ranging from 9.6x to 13.1x; (2) the range of illustrative terminal values for Hillrom; (3) the net debt of Hillrom as of June 30, 2021; and (4) the number of fully diluted outstanding shares of Hillrom common stock.

33. The Proxy Statement fails to disclose the following concerning Goldman Sachs' "*Illustrative Present Value of Future Share Price Analysis*": (1) the individual inputs and assumptions underlying the (i) multiples of 13.0x to 15.0x, and (ii) illustrative discount rate of 7.9%; and (2) the projected dividends paid.

34. With respect to Goldman Sachs' "*Premia Analysis*," the Proxy Statement fails to disclose each transaction and the individual premiums paid therein.

35. The Proxy Statement fails to disclose the following concerning Goldman Sachs' "*Selected Transactions Analysis*": (1) the closing date of each transaction; and (2) the value of each transaction.

   b. *BofA's Analyses*

36. With respect to BofA's "*Selected Publicly Traded Companies Analysis*," the Proxy Statement fails to disclose the individual multiples and financial metrics of each company BofA observed in its analysis.

37. The Proxy Statement fails to disclose the following concerning BofA's "*Selected Precedent Transactions Analysis*": (1) the individual multiples and financial metrics of each transaction BofA observed in its analysis; (2) the closing date of each transaction; and (3) the value of each transaction.

38. The Proxy Statement fails to disclose the following concerning BofA's "*Discounted Cash Flow Analysis*": (1) the terminal values for Hillrom; (2) the inputs and

9

assumptions underlying the (i) multiples of 10.0x to 15.0x, and (ii) discount rates ranging from 7.0% to 9.0%; (3) the net debt of Hillrom as of June 30, 2021; and (4) the number of fully-diluted shares of Hillrom common stock outstanding.

39. The Proxy Statement fails to disclose the following concerning BofA's "*Wall Street Analysts Unaffected Price Targets*" analysis: (1) the individual price targets observed by BofA in its analysis; and (2) the sources thereof.

## COUNT I
### For Violations of Section 14(a) and Rule 14a-9 Promulgated Thereunder
### Against All Defendants

40. Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

41. During the relevant period, Defendants, individually and in concert, directly or indirectly, disseminated or approved the false and misleading Proxy Statement specified above, which failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading, in violation of Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder by the SEC.

42. Each of the Individual Defendants, by virtue of his/her positions within the Company as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a) of the Exchange Act. Defendants, by use of the mails and means and instrumentalities of interstate commerce, solicited and/or permitted the use of their names to file and disseminate the Proxy Statement with respect to the Proposed Transaction. The Defendants were, at minimum, negligent in filing the materially false and misleading Proxy Statement.

43. The false and misleading statements and omissions in the Proxy Statement are material in that a reasonable shareholder would consider them important in deciding how to vote

on the Proposed Transaction.

44. By reason of the foregoing, Defendants have violated Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder.

45. Because of the false and misleading statements and omissions in the Proxy Statement, Plaintiff is threatened with irreparable harm.

## COUNT II
### Violations of Section 20(a) of the Exchange Act
### Against the Individual Defendants

46. Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

47. The Individual Defendants acted as control persons of the Company within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their senior positions as officers and/or directors of the Company and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy Statement filed with the SEC, they had the power to and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the false and misleading Proxy Statement.

48. Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected. As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to the Proxy Statement, and to correct promptly any public statements issued by the Company which were or had become materially false or misleading.

49. In particular, each of the Individual Defendants had direct and supervisory involvement in the operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same. The Individual Defendants were provided with or had unlimited access to copies of the Proxy Statement and had the ability to prevent the issuance of the statements or to cause the statements to be corrected. The Proxy Statement at issue contains the recommendation of the Individual Defendants to approve the Proposed Transaction. Thus, the Individual Defendants were directly involved in the making of the Proxy Statement.

50. In addition, as the Proxy Statement sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Proposed Transaction. The Proxy Statement purports to describe the various issues and information that they reviewed and considered—descriptions which had input from the Individual Defendants.

51. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

52. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9 promulgated thereunder, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Defendants' conduct, the Company's shareholders will be irreparably harmed.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A.  Preliminarily and permanently enjoining Defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction and any vote on the Proposed Transaction, unless and until Defendants disclose and disseminate the material information identified above to Company shareholders;

B.  In the event Defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages;

C.  Declaring that Defendants violated Sections 14(a) and 20(a) of the Exchange Act, and Rule 14a-9 promulgated thereunder;

D.  Awarding Plaintiff reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

E.  Granting such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.

Dated: October 12, 2021                      Respectfully submitted,

**HALPER SADEH LLP**

By: /s/ Daniel Sadeh
Daniel Sadeh, Esq.
Zachary Halper, Esq. (to be admitted *pro hac vice*)
667 Madison Avenue, 5th Floor
New York, NY 10065
Telephone: (212) 763-0060
Facsimile: (646) 776-2600
Email: sadeh@halpersadeh.com
           zhalper@halpersadeh.com

*Counsel for Plaintiff*